**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **VINCENT GRIFFIN, Y54546,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**JESSE NAVAREZ,**<br>**M. MILLER,**<br>**WALL,**<br>**KIMBERLY,**<br>**NURSE HARRIS,**<br>**SEAN HOWELL,**<br>**C/O PARKE,**<br>**SERGEANT ANDREW,**<br>**SERGEANT SMITH,**<br>**JANE DOE 1 C/O**<br>**JANE DOE 2 C/O**<br>**JANE DOE 3 C/O,**<br>**LT. MASON,**<br>**NURSE AMANDA,**<br>**DR. DEVENNEY,**<br><br>**Defendants.** | ) | **Case No. 26-cv-1119-DWD** |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Vincent Griffin, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the defendants have violated his rights by engaging in excessive force and failing to treat his ongoing hand/wrist injury. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to

filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff alleges that he had hand/thumb/arm surgery in mid-December 2025. (Doc. 1 at 8). On February 26, 2026, when he reported to the healthcare unit for daily treatment, Defendant Navarez stopped him and aggressively directed him to cuff up. Plaintiff showed Navarez medical permits concerning his orthopedic hand brace and requiring the use of certain restraints. Navarez then directed Plaintiff to enter the intelligence office with Defendant Miller and Navarez conducted a strip search in front Miller, harassing Plaintiff all the while. Plaintiff alleges Miller and Navarez enjoyed hurting and damaging his injury despite knowing he recently had surgery. (Doc. 1 at 9). Plaintiff specifically alleges his hand brace was pulled on causing him to scream due to throbbing pain, though it is not clear which of the two defendants pulled on his brace. Navarez and Miller then escorted Plaintiff back to the medical unit where a Jane Doe nurse (a non-party) indicated that Plaintiff's brace could not be removed until he saw the surgeon for a follow-up appointment.

Plaintiff alleges Miller became agitated and combative and called her supervisor, Defendant Major Wall. Plaintiff claims Wall entered the healthcare unit and directed him

to remove his brace under threat of being sprayed with mace and placed in segregation. (Doc. 1 at 9). Defendants Nurses Kimberly and Harris then entered, and Plaintiff pleaded with them for help with the brace removal issue and he asked them to inspect his injury, but both declined any assistance. Plaintiff faults Harris and Kimberly for leaving him without medical assistance to suffer in pain.

Plaintiff alleges that Defendant Wall then summoned a tactical team and Defendants Sgt. Andrew, Sgt. Smith, Lt. Mason, and Jane Does 1-3 rushed him with a shield and started pulling on his brace and injured arm causing severe pain. (Doc. 1 at 9-10). Plaintiff claims he screamed out in pain. (*Id.* at 10). Plaintiff claims he was drug to segregation and his brace was taken from him. He alleges Defendant Kimberly wrote a permit for removal of the brace without approval from a head doctor or surgeon. Plaintiff further alleges that once in segregation Sgt. Howell told him that if he kept misbehaving Howell would spray him with mace, and C/O Parke echoed the same threats. (*Id.* at 10). Plaintiff alleges he was left in the cell in pain for days.

At some point, Plaintiff was transferred to Menard, though he does not say when the transfer occurred. Plaintiff alleges that on July 15, 2026, he reported to the North 2 infirmary because his hand and thumb were not stable, they were not correctly healed, they were stiff, and he was not getting adequate blood flow. (*Id.*). Plaintiff alleges that Defendant Nurse Amanda examined him and then tried to pull and push Plaintiff's thumb into place. Plaintiff screamed out in pain. He complains that Amanda never got consent from the doctor before attempting this treatment, she caused him more damage, and she refused to let him see a doctor. Plaintiff alleges that on July 14, 2026, he saw Dr.

Devenney and he complained about improper healing of his hand. (Doc. 1 at 11). He alleges he had been refused treatment for six months at that point. He further alleges he wrote Dr. Devenney about his throbbing pain and was denied care. Plaintiff alleges that on August 24, 2026, he wrote a grievance about follow-up appointments with the surgeon and a medical permit. (Doc. 1 at 11).

In support of the complaint, Plaintiff submitted several grievance receipt slips spanning his time at Big Muddy and Menard, though none of the slips indicate if any of the grievances have been processed at all levels of review. As relief, Plaintiff seeks monetary compensation and preliminary injunctive relief. (Doc. 1 at 12). Plaintiff does not specify what form of preliminary injunctive relief he desires.

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Navarez and Miller for their role in physically harming Plaintiff's injury on February 26, 2026;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Kimberly and Harris for allegedly refusing medical care on February 26, 2026, and/or for discontinuing Plaintiff's medical permit for his splint;**

**Claim 3:** **Eighth Amendment cruel and unusual punishment or excessive force claim against Defendants Wall, Andrew, Smith, Mason, and Jane Does 1-3 for their alleged role in physically harming Plaintiff's injury on February 26, 2026;**

**Claim 4:** **Eighth Amendment cruel and unusual punishment claim against Defendants Howell and Parke for allegedly threatening Plaintiff with mace on February 26, 2026;**

**Claim 5:** **Eighth Amendment deliberate indifference claim against Defendants Amanda or Dr. Devenney for their role in treating or failing to treat Plaintiff's injury at Menard on July 14 or 15, 2026.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

### Claim 1

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Here, Plaintiff alleges that on February 26, 2026, Defendant Navarez summoned him into the intelligence office and then strip searched him and pulled on his wrist brace causing extreme pain despite knowing that Plaintiff recently had surgery. There is no indication that there was any basis for the force exerted, and Plaintiff alleges both Navarez, and Miller (who either participated or looked on), enjoyed causing him

pain. At this early juncture, these allegations are sufficient to proceed against Navarez and Miller under a theory of excessive force or cruel and unusual punishment.

To the extent that Plaintiff takes issue with the manner of the alleged strip search, he has not said enough for the Court to evaluate this issue, so no claim proceeds concerning the alleged search.

**Claim 2**

In Claim 2, Plaintiff alleges that Navarez and Miller then took him to the medical unit where at some point he saw nurses Kimberly and Harris. He alleges he begged them to look at his arm injury and to provide care, but they both declined, leaving him to languish in pain.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Here, although Plaintiff may have attempted to notify Kimberly and Harris of a serious medical condition with his injury, the Court is not persuaded that a single passing interaction with these nurses in a context where they were not scheduled to see Plaintiff is enough to establish their deliberate indifference. *See* *Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"). An inmate who calls out to passing medical staff for help cannot expect that every provider who walks past him immediately becomes liable for failing to assist him. Furthermore, Plaintiff does not specify what he told Kimberly or Harris about the state of his injury when he spoke to them, nor does he say what they could observe about his condition as they passed by in the healthcare unit. Without more detail, the claim against Kimberly and Harris is insufficient.

As for Defendant Kimberly, Plaintiff also asserts that she authorized the removal of his brace without authorization from a doctor or surgeon, but this allegation is conclusory and speculative. Plaintiff does not explain how he came to know or believe that Kimberly was responsible for this action, and in fact he does not attribute the ultimate removal of the brace personally to any of the 14 defendants. Without more information about this issue, the Court does not find the allegations against Kimberly sufficient to sustain a claim for deliberate indifference.

**Claim 3**

Plaintiff alleges that some time after arriving at the medical unit, Defendant Miller became agitated and summoned Defendant Wall, who in turn summoned a tactical team. Plaintiff alleges Wall threatened him with mace and segregation if he would not remove his splint, though there is no indication that Wall acted on either threat. The mere fact that Wall arrived or called for a tactical team is not enough to establish that he personally intended to cause Plaintiff harm.

Plaintiff alleges that Defendants Andrew, Smith, Mason, and Jane Does 1-3, responded in tactical gear, battered him with shields and pulled on his brace causing further severe pain. While it is possible that these assertions might support an excessive force claim with greater context, they are inadequate as presently pled for a more fundamental reason. Personal liability under § 1983 requires a plaintiff to allege the individual actions a defendant took, but here, Plaintiff has only named these six defendants in shotgun fashion. The generic assertion that one or more defendants caused harm is not sufficient. *See e.g.*, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Thus, Claim 3 will be dismissed as insufficiently pled.

**Claim 4**

Plaintiff alleges that upon arrival to segregation, Defendants Howell and Payne threatened to spray him with mace if he misbehaved. While certainly unwelcome, plain verbal harassment without any threatening physical conduct is generally insufficient to state a claim. Here, Plaintiff has not asserted that Howell or Payne did anything more than make a passing threat, so he may not proceed against them under Claim 4.

**Claim 5**

Plaintiff alleges that in July of 2026 he sought treatment for his ongoing thumb/hand/arm problems first from Dr. Devenney on the 14th, and second from nurse Amanda on the 15th. Plaintiff is not clear about when he arrived at Menard, though he alleges that either when he saw Dr. Devenney or when he filed a grievance in late August of 2026, he had gone six months without care. Plaintiff's allegations may not proceed as pled against Amanda or Dr. Devenney. He does not describe what stage his care was at when he saw them, what he told them about his injury and the history of care, or what they could personally observe. He faults Amanda for attempting to somehow realign his thumb, but there is no indication she acted thinking she would cause serious harm. There simply is not enough information in the complaint about Plaintiff's interactions with Nurse Amanda or Dr. Devenney for the Court to further assess if they may have been deliberately indifferent in their conduct.

**Request for Immediate Injunctive Relief**

In the demand for relief, Plaintiff baldly states that he wants preliminary injunctive relief, but he does not say what he specifically needs. To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See* *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." *Tully v. Okeson*,

977 F.3d 608, 613 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *Doe v. University of Southern Indiana*, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor for preliminary injunctive relief).

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

Plaintiff's demand for injunctive relief is too ambiguous for the Court to provide narrowly tailored relief. Additionally, Plaintiff is now housed at Menard, but the Court found Claim 5 against the Menard defendants insufficient to state a claim. A court will not grant injunctive relief broader than the operative claims or parties, and because Claim 5 has been dismissed, there is no operative claim upon which to grant injunctive relief at Menard. If Plaintiff wishes to seek injunctive relief in the future, he must file a freestanding motion that follows Federal Rule of Civil Procedure 65.

**Disposition**

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Navarez and Miller. By contrast, **Claims 2-5** are insufficient to state a claim. The Clerk of Court shall **TERMINATE** Defendants Wall, Nurse Kimberly, Nurse Harris, Sean Howell, C/O Parke, Sgt. Andrew, Sgt. Smith, Jane Does 1-3, and Lt. Mason for Plaintiff's failure to state a claim against them. Plaintiff's barebones demand for a preliminary injunction is denied for the reasons explained above.

The Clerk of Court is **DIRECTED** to prepare for Defendants Navarez and M. Miller: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: September 24, 2026

DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.